Burks *v.* Burks.

## R. H. BURKS *v.* LAURA G. BURKS.

1. EQUITY. *Trusts.* B held money in trust for his mother to be invested in a home for her use during her life, and after her death to go to her children. B owned a farm of 272 acres, which he had not fully paid for, the title of which was in him. By agreement with his mother, the money was used in paying off the debt on this farm, and he, in consideration thereof, agreed to set apart 100 acres of the tract as a home for her, which was done. She moved on the land so set apart, and lived on it a number of years with her family.

*Held,* that after her death her heirs could assert a resulting trust to her and them in the 100 acres of land set apart as a home.

Case cited: Turner *v.* Pettigrew, 6 Hum., 439.

2. PARTITION. *Infants. Practice.* In partition cases it is not improper to make infants parties complainants.

Cases cited: Davidson *v.* Bowden, 5 Sneed, 129; Winchester *v.* Winchester, 1 Head, 460.

Code cited: Sec. 3270.

3. COSTS. The victorious parties to the cause filed as evidence a record which had no relation to the issues involved.

*Held,* that they should be taxed with the costs of the record so introduced.

---

### FROM LAUDERDALE.

---

Appeal from the Chancery Court. HENRY J. LIV-INGSTON, Chancellor.

RAINES & BLACK and MARLEY & STEELE for complainants.

WILKINSON & WILKINSON for defendants.

FREEMAN, J., delivered the opinion of the court.

This bill is filed to set up and have declared a

23—VOL. 7.

resulting trust in a tract of land of one hundred acres in Lauderdale county. The proof, with more than ordinary distinctness, shows about the following state of facts:

In January, 1850, Mrs. Elizabeth Burks and her son, Richard Burks, were on a visit to her father, John Shelton, who lived in Virginia. That the father and one of her brothers agreed, each to furnish $150 to purchase Mrs. Burks a home in West Tennessee. That they gave the $300 to Richard to bring to Tennessee and deliver to Seaton B. Burks, an elder son of Mrs. Burks, and request or direct him to purchase a home for his mother. It appears clearly that the money was delivered to him, and he undertook the trust of investing it in the land for a home, and was to take the title to Mrs. Burks for her life, and after her death to her children, or the issue of such as might be dead, at the death of the mother. It also appears that Seaton had purchased, about this time, a tract of land of 272 acres, but which had not been paid for. That, upon his mother agreeing to the arrangement, it was understood that 100 acres of the land, in a very well-defined portion of the tract, was to be appropriated for the purpose of the home which he had undertaken to buy for Mrs. Burks; and, in accordance with this arrangement, the family moved on the land, and a division line was agreed on between the parties. The family remained on this land, claiming it as the land of Mrs. Burks, until the death of the husband, the son, and afterwards Seaton B., the son who had undertaken to invest the

money. It also clearly appears, from repeated admissions of Seaton B., that he had paid this $300 on his purchase of the land, thus paying for 100 acres at $3 per acre, the purchase price. That the money was paid for the land, is not only shown by proof of the statements repeatedly made by Seaton B., but is abundantly corroborated by all the other circumstances shown in the record, as well as by the fact that his mother and family were put in possession o⸍ the land in the fall after the receipt of the money in January, 1850, and continued to occupy it up to his death, he all the time recognizing it as her land, and paid for with her money. He died, however, without ever having conveyed to her the legal title, having taken the title originally of the entire tract to himself, no doubt, as shown, with the purpose of conveying the share of the mother to her, as he had undertaken to do, when he received the money.

Assuming the above state of facts, is the trust made out, under well-settled rules of law, so as to be enforced in a court of equity?

This branch of equitable rights is ranged under three distinct classes by Mr. Perry in his work on Trusts, secs. 25–6–7, frequently treated in our cases, as well as by elementary writers, as interchangeable.

The first is "implied trusts—which are trusts that the courts imply from the words of an instrument, where no express trust is declared, but such words are used that the court infers or implies that it was the purpose or intention of the parties to create a trust." As an illustration of this class, he gives the

case of a will where there is an absolute gift, with words expressing "a desire, request," &c., that the legatee will dispose of the property in a certain designated way, as, that he shall appropriate so much from the fund to certain relations. Such words are held to raise an implied trust in favor of the designated parties, who can enforce the same in a court of equity.

The second class he designates as "resulting trusts, that the courts presume to arise out of the transactions of parties, as, if one man pays the purchase money for an estate and the deed is taken in the name of another, courts presume in such a case that a trust is intended for the person who pays the money.

A constructive trust is one that arises when a person, clothed with a fiduciary character, by fraud or otherwise gains some advantage to himself. Courts construe this to be an advantage for the *cestui que trust*, or a constructive trust.

We may remark, that the last two descriptions of trust might, with propriety, be placed under the same definition or title, as in both cases the trust is raised, or results, by construction of law, out of the facts shown, and not from anything expressed in terms by the parties.

This case, on the facts stated, has the elements of each of the last two descriptions of trust. In the first place, it may fairly be said that the money of one party has paid for the estate and the title has been taken to another. In the other aspect of it,

Seaton B. Burks was a trustee for the investment of the money in a home for his mother, has invested the fund in this land, but by negligence and want of proper attention to his duty, he has obtained the legal title and failed to convey it, as he ought to have done, in pursuance of the trust with which he stood charged.

And, in the language of the court in 6 Hum., 439, "inasmuch as it is the appropriation of the money in cases like this that raises the equity, it can make no difference whether these appropriations be made at the time of the contract of purchase or afterwards," the effect is the same. It is true it is not shown, nor could it be, that this money was specifically appropriated to pay for this precise 100 acres of land now claimed, it having been paid on the whole purchase. Yet, as this was the part intended by the parties to be appropriated to the trust, and was so designated and understood between them, and acted on for a great number of years, we declare the trust in the 100 acres claimed in the bill, and in this affirm the decree of the Chancellor.

The bill, however, presents another question, as to which the Chancellor refused the relief prayed. It stated facts showing clearly that the land could not be divided among the numerous owners or claimants, and that, in the event their title was set up, it would be manifestly to the interest of the parties to sell the land for partition and divide the proceeds.

It is true, that in the case of *Davidson* v. *Bowden,* 5 Sneed, 129, and of *Winchester* v. *Winchester,* 1 Head,

460, the rule was laid down under the act of 1827, ch. 54, that it was error to make infants petitioners in such cases. This was mainly based on the language of the act, which provided that the party might "file his bill in the Circuit or Chancery Court of the county or district," &c., and that "suits under the act" should be conducted as other suits in equity. But the language of the Code is different from the act of 1827, and provides (sec. 3270) that the proceeding shall be "by bill or partition," and "shall set forth, as far as known, the names of the owners, their residence, which of them are infants or married women." We think this language was intended to meet the two cases cited. At any rate, it clearly provides that the proceeding may be either by bill or by petition, thus using the terms in contradistinction the one to the other—a bill importing a suit *inter partes*, between complainants and defendants; a petition importing an *ex parte* proceeding. It cannot be assumed that it was intended that the position of the parties, as complainants or defendants, should depend on the question of whether they proceeded by the one or the other form of proceeding. In addition to this, there might be a case where it would be proper to divide land, on the application of infants themselves by their guardian or next friend, and to make a sale for this purpose. For these and other reasons that might be suggested, we do not think a case like this should be dismissed because a portion of the complainants were minors and not defendants. While we think, in all ordinary cases, it

is a proper practice to make the infants defendants, we do not think the failure to adopt this practice should defeat a proper application, nor the rule held to be imperative. This case well illustrates the necessity of some flexibility in the rule. The parties, minors, were compelled to bring the suit as complainants to assert their title to the land. They have asked the court, on sufficient grounds, to sell the land, in order to effectuate the possession and enjoyment of their rights thus sought to be recovered. The land is declared to be theirs, as tenants in common. Why should they be compelled now to resort to another proceeding, equally as expensive perhaps, in order to have their rights declared and apportioned in severalty. We can see no good reason why this may not be done. The court would, in all such cases, be bound to see that the necessity for the sale is manifestly to the interest of the parties, rather than to partition or divide, was as clearly made out, as in case the infants were defendants. With this duty performed, there can be no solid objection to the proceeding because one or more of the parties complainant happens to be a minor.

The case will be affirmed as to the first point, and reversed as to the second; and, inasmuch as proof will have to be taken, on reference to the clerk, to show the necessity of the sale, we remand the case for this purpose. When it appears that such sale is necessary under the statute in order to partition, it can be ordered by the court.

A question is made as to the costs. The parties

complainant have introduced and referred to in their bill a proceeding showing the appointment of Seaton Burks trustee for his mother as to certain property devised to her by her father, made in the Chancery Court of Lauderdale county. We cannot see that this proceeding had any relation whatever to the case made by the bill. So much costs as resulted from the introduction of these proceedings must be taxed to the complainants. Except this, the costs below will go as determined by the Chancellor. The costs of this court will be paid by defendants.